*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
TRAVELERS PROPERTY CASUALTY :
COMPANY OF AMERICA, :
             Plaintiff :
: Civil Action No.: 10-6320 (FLW)
         v. :
: OPINION
CONTINENTAL INSURANCE COMPANY :
OF NEW JERSEY, :
:
             Defendant. :
_____:

<u>WOLFSON, United States District Judge</u>:

      In this action, two insurance companies, Plaintiff Travelers Property Casualty Co. of Am. ("Plaintiff" or "Travelers") and Defendant Encompass Ins. Co. of New Jersey f/k/a Continental Ins. Co. of New Jersey ("Defendant" or "Encompass"), dispute which insurance policy provides primary coverage for an automobile accident. The underlying incident occurred when a real estate agent, who was employed by Weichert Company ("Weichert") at the time of the accident and acting within the scope of his employment, negligently caused an automobile accident while showing properties to a third-party client; the third-party sued for personal injuries and recovered a judgment against Weichert and the agent. The real estate agent, driving his own personal vehicle, was insured by Encompass, and Weichert was insured under a commercial automobile policy issued by Travelers. The main point of contention in this case is whether

Weichert was an insured under the Encompass policy, and if so, what type of duties Encompass owed Weichert as a result of that relationship. In the instant matter, both parties move for summary judgment. For the reasons set forth herein, Encompass' motion for summary judgment is **GRANTED**; and Travelers' cross-motion is **DENIED**.

## BACKGROUND

The Court only recounts the following undisputed facts necessary for the resolution of these motions for summary judgment.

### I.   The Underlying Lawsuit

The underlying state lawsuit that is the subject of this insurance dispute arose from a motor vehicle accident that occurred on November 25, 2003 in Randolph, New Jersey. Pl. Facts, ¶ 3; Def. Facts, ¶ 1-3. The plaintiff in that case, Michele Cooper, was a passenger in a car operated by Robert Jenkins, whose negligent operation resulted in a car accident that caused Cooper to sustain a number of injuries. Pl. Facts, ¶ 3, 6, 8; Def. Facts, ¶ 1. At the time of the accident, Jenkins, a real estate agent of Weichert, was showing homes to Cooper, a prospective client. Pl. Facts, ¶ 5; Def. Facts, ¶ 1, 3.[1] Importantly, Jenkins was acting in his capacity as a Weichert real estate agent at the time of the accident. Pl. Facts, ¶ 5; Def. Facts, ¶ 1, 3. In November 2005, Cooper

---

[1] The issue whether Jenkins was a Weichert employee or an independent contractor at the time of the accident was resolved by the state court in the underlying lawsuit; the court found that Jenkins was an employee of Weichert and that Weichert was vicariously liable for Jenkins' actions. Def. Facts, ¶ 50. As such, that issue is not disputed here.

and her husband, suing *per quod*, filed a lawsuit against both Jenkins and Weichert, seeking to recover for the injuries she sustained. Pl. Facts, ¶ 21; Def. Facts, ¶ 3.

## II.   The Insurance Policies

Jenkins was operating his personal vehicle insured by Encompass pursuant to his wife's automobile policy (the "Encompass Policy"), under which Jenkins was named as an insured driver. Pl. Facts, ¶ 9, 18; Def. Fas, ¶ 4. The Encompass Policy had a $250,000 per person limit for bodily injuries; that is, Encompass would pay, on behalf of the policy holder, damages for which the policy holder or any covered person are legally liable, up to the $250,000 policy limit. Pl. Facts, ¶ 19. Covered persons are identified as:

> (1) You [the policy holder] or any family member for the ownership, maintenance or use of any covered motor vehicle.
>
> (2) Any other person occupying or using any covered motor vehicle with permission from [the policy holder] or a family member.
>
> (3) With respect to a covered motor vehicle that [the policy holder] own[s] or that is shown on the Coverage Summary, any person or organization legally responsible but only for acts or omissions of any person included in [(1)] above.
>
> (4) With respect to a covered motor vehicle, other than one described in [(3)] above, any person or organization legally responsible but only for acts or omissions of any person included in [(1)] above. This provision applies only if the person or organization does not own or hire the motor vehicle.

*Id.* The Policy contained an "other insurance clause," which provides that where there is other insurance applicable to a loss, Encompass will pay "only [its]

share of the loss," which equals the proportion that its limit of liability bears to the total of all applicable limits. Pl. Facts, ¶ 19; Def. Facts, ¶ 6.

Weichert was insured under a commercial automobile insurance policy issued by Travelers, which was effective at the time of the accident (the "Travelers Policy"). Pl. Facts, ¶ 20; Def. Facts, ¶ 7. The Travelers Policy covered Weichert up to $1,000,000 for liability as a result of negligence arising out of the use of "any auto." Pl. Facts ¶ 20; Def. Facts ¶ 8-9. In that connection, the Travelers Policy contained a "Business Auto Coverage Extension Form" which provided that: "An employee of yours [Weichert] is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or personal affairs." Def. Facts, ¶ 10. In addition, the Policy also contained a provision addressing other insurance policies, which stated: "[f]or any covered auto you [Weichert] don't own, the insurance provided by this policy is excess over any other collectible insurance." Pl. Facts, ¶ 20. The parties do not dispute that Weichert did not own the vehicle involved in the accident. *Id.*

### III. The State Court Tort Action

On December 5, 2005, Travelers received a copy of the underlying complaint, the same day that it was served upon Weichert. Pl. Facts, ¶24; Def. Facts, ¶ 11. Upon receipt, the matter was assigned to a claim representative at Travelers, who made the determination that Weichert "wouldn't be liable," and that "the Travelers polic[y] would become excess over the [Encompass Policy's] coverage." Pl. Facts, ¶ 26-27; Def. Facts, ¶ 14, 17. Significantly, this

4

determination was based on Travelers' position that Jenkins was an independent contractor rather than a Weichert employee, and the belief that the Encompass Policy "followed the car." Pl. Facts, ¶ 26-28; Def. Facts, ¶ 14, 17-20. Accordingly, on December 13, 2005, Travelers wrote to Encompass to tender the defense of Weichert, asserting that Weichert qualified as an insured party pursuant to the Encompass Policy. Pl. Facts, ¶ 27-29; Def. Facts, ¶ 11-12. In that letter, Travelers notified Encompass that in the event that Encompass did not assume the defense of Weichert, that Travelers would fulfill its obligation to defend Weichert, but would subsequently seek re-imbursement from Encompass for all attorneys' fees and costs incurred it the defense. Pl. Facts, ¶ 29-30; Def. Facts, ¶ 15. Subsequently, Encompass declined the tender of Weichert's defense, and Travelers accordingly referred the matter to outside legal counsel. Pl. Facts, ¶ 31, 37; Def. Facts, ¶ 15-16.

After retaining legal counsel, Travelers maintained the position that Jenkins was not a Weichert employee, and therefore, Weichert was not liable for Cooper's injuries. Pl. Facts, ¶ 46, 49, 53-55; Def. Facts, ¶ 17-19. Moreover, according to Encompass, in evaluating Travelers' potential obligations in connection with the Coopers' lawsuit, Travelers' defense counsel did not value the case over $250,000, and thus, had no concern that the underlying verdict might exceed the Encompass Policy's $250,000 coverage limit. Def. Facts, ¶ 37. Defense counsel for Encompass also independently evaluated the case on various occasions in advance of trial, and predicted the potential verdict value

5

to be "200,000 to $300,000, if not higher." Pl. Facts, ¶ 103; Def. Facts, ¶ 31. Thus, he believed that a $175,000 settlement offer would be appropriate. Pl. Facts, ¶ 83; Def. Facts, ¶ 31.

### IV.   Settlement Negotiations and Verdict

Based on the evaluations of Encompass' assigned claim adjuster and defense counsel, Encompass believed a settlement range between $125,000 to $150,000 was reasonable. Def. Facts, ¶ 32. Subsequently, in accordance with company policy, Encompass' evaluation coordinator independently reviewed the claim, and placed an "evaluation amount" on the claim, proscribing a low value of $148,750 and a high value of $175,000. Def. Facts, ¶ 34-36.

Approximately two months before the parties advanced to trial, Cooper's counsel sent a letter to Encompass demanding that the insurance company pay the $250,000 Encompass Policy limit, under the condition that the settlement would not preclude Cooper from pursing claims against Weichert under a respondeat superior/agency theory. Def. Facts, ¶ 43. As noted earlier, the state court found that Jenkins was an employee of Weichert. Indeed, until the eve of trial, the Coopers' settlement demand was $1 million to settle the whole case. Def. Facts, ¶ 41. After a full trial, the jury found in favor of the Coopers in the amount of $1,250,000. While both Travelers and Encompass were "shocked" by the amount, they, nevertheless, agreed to a settlement with the Coopers in the amount of $1.25 million plus pre-judgment interest. Def. Facts, ¶¶ 54, 57. In that regard, Encompass paid the Coopers its policy limit of $250,000, and

Travelers paid its $1,000,000 policy limit, plus certain interest. Id. According to Encompass, in entering into this settlement, Travelers' only reservation of rights was to pursue its remedies against Encompass with respect to the issue of costs of defense, which was based on Travelers' position that Weichert was an insured under the Encompass Policy, and therefore, Encompass had a duty to defend and indemnify. Def. Facts, ¶ 59.

V.      **The Instant Suit**

Travelers brought the instant suit to recover the full payment that it made to the Coopers under the settlement, $1,000,000, as well as the attorneys' fees and costs expended in the state court action. Travelers claims that Encompass provided primary coverage to Weichert for the underlying lawsuit, and therefore, Encompass' failure to settle the underlying claims prior to the trial constituted a breach of its duty of good faith and fair dealing. In the instant matter, both parties move for summary judgment on all claims. The threshold question, here, is whether Weichert, as the employer of Jenkins, was an insured under the Encompass Policy.

## DISCUSSION

I.      **Standard of Review**

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(a). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1985). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. See Id. at 252. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." Celotex v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading. Id. at 324; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." Anderson, 477 U.S. at 252.

Moreover, under New Jersey law, interpretation of insurance policy provisions is essentially a question of law and suitable for resolution on a motion for summary judgment.

II.   The Encompass and Traveler Policies

In its cross-motion for summary judgment, Travelers spent most of its brief raising purported issues of fact relating to Encompass' conduct in the underlying lawsuit.  In that connection, Travelers insists that Encompass was acting in bad faith for failing to settle the state court action, which ultimately resulted in a substantial verdict in favor of the plaintiffs in the state case.  However, before the Court can assess the record as to those disputed facts, I must first resolve a seminal legal issue: the status of Weichert vis-à-vis the Encompass Policy at the time of the underlying incident.

To that point, Travelers, citing the "other insurance" clause, contends that coverage under the Travelers Policy was afforded only on an excess basis because Encompass covers the same loss.  Thus, Travelers argues that Weichert was an insured under the Encompass Policy, the primary insurer.  On the other hand, Encompass maintains that irrespective of the "other insurance" clause, the Travelers Policy was not a "true" excess policy because it is not a policy issued as excess to another primary policy; rather, Encompass claims that Encompass and Travelers were "co-primary" insurers, each of whom had a primary duty to defend and indemnify its respective insured.  Encompass relies primarily on the New Jersey Appellate Division's decision in CNA Ins. Co. v. Selective Ins. Co., 354 N.J. Super. 369 (App. Div. 2002) ("CNA").  My analysis will begin with that case since CNA dealt with facts and insurance policies substantially similar to this case.

At the outset, I note that an insurance policy is a contract to pay a sum of money upon the happening of a particular event. See Warnig v. Atl. County Special Servs., 363 N.J. Super. 563, 572 (App. Div. 2003). In particular, primary insurance "attaches immediately upon the happening of the occurrence that gives rise to liability." CNA, 354 N.J. Super at 378. In that regard, there are situations where there are two or more insurance policies that cover the same loss, and in those circumstances, which insurance policy is the primary sometimes becomes the subject of lawsuits. Indeed, the CNA decision dealt with two primary insurance policies in the context of competing "other insurance" clauses.

In CNA, a real estate employee of Coldwell Banker was involved in an auto accident while driving her personal car and was acting in the scope of employment. CNA, 354 N.J. at 373. The injured third-party sued both the employee and Coldwell Banker on a respondeat superior theory. The employee was covered by a Selective auto insurance policy, and Coldwell Banker was insured by CNA Insurance, which commercial automobile policy covered the same loss. Id. at 373. The CNA policy, like the Travelers Policy here, contained an "other insurance" clause, which provided that "[f]or any covered "auto" you [Coldwell Banker] don't own, the insurance provided by this Coverage Form is excess any other collectible insurance . . . ." Id. Further, identical to the Encompass Policy here, the Selective Policy contained an "other insurance" clause that provided that in the event there "is other applicable liability

insurance, [Selective] will pay only [its] share of the loss." Id. Notwithstanding the competing "other insurance" clauses, CNA demanded that Selective defend and indemnify Coldwell Banker in connection with the accident; Selective declined.[2] Id. at 374.

On appeal, the threshold question was whether the relationship between CNA and Selective was that of "co-primary insurers"; that is, each insurance company would have its own primary and independent obligation to defend its insured. Id. at 377-78. Selective reasoned that "there is a widely accepted difference between a 'true' excess insurance policy and a primary insurance policy whose indemnity obligation is made secondary by . . . 'other insurance' clauses." Id. at 378. CNA, however, insisted that by virtue of the "other insurance" provision in its policy, its obligations were excess to those of Selective. Id. at 378-79.

The appellate court discussed at length the difference between a primary insurance policy containing an excess "other insurance" clause and a "true" excess policy. The latter requires the existence of a primary policy as a condition of coverage. Id. at 379. As the court explained: "To have a true primary-excess relationship, the same insured must purchase underlying coverage for the same risk." Id. at 383; W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co., 407 N.J. Super. 177, 198 (App. Div. 2009). Customarily, "a true

---

[2] While not pertinent to my legal analysis, CNA brought suit against Selective for settling the underlying tort action in bad faith.

11

excess policy includes a requirement for underlying primary insurance in a specific sum, and lists the underlying primary insurance." Id. at 380; see Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959) (holding that there can be no excess insurance in the absence of a primary insurance). The purpose, then, of a true excess policy is to protect the insured "in the event of a catastrophic loss in which liability exceeds the available primary coverage." Id. at 379 (quoting 15 Couch on Insurance § 220:32 (3d ed. 1999)).[3]

On the other hand, a primary policy with an "excess other insurance" clause is "a device which allows the 'primary insurer [to] attempt . . . to limit or eliminate its liability where another primary policy covers the risk." Id. at 380 (citing 15 Couch on Insurance § 220:32 (3d ed. 1999)). Such a provision "makes a primary insurer secondarily liable when other available coverage exists." Id.

---

[3] The Appellate Division's conclusions are supported by out-of-state cases as well. For example, as the CNA court noted, both the Supreme Courts of Wisconsin and Arizona have drawn the distinction between a "true excess" and a primary insurer in the context of "other insurance" provisions. A "true excess" policy exists when that policy is written under circumstances where rates were ascertained after giving due consideration to known existing and underlying basic or primary policies. See Lay v. Bunderson, 320 N.W.2d 175, 179 (Wis. 1982); St. Paul Fire & Marine Ins. Co. v. Gilmore, 812 P.2d 977, 981 (Ariz. 1991). According to Lay and Gilmore, without those considerations at the time of underwriting, a primary insurance policy containing an excess "other insurance" clause does not change its primary status when another policy covers the same loss. See Fireman's Fund Ins. Co. v. CNA Ins. Co., 177 Vt. 215, 235 (2004) (same); Frankenmuth Mutual Insurance Co. v. Continental Insurance Co., 537 N.W.2d 879, 881 n.4 (Mich. 1995) ("True excess coverage occurs where a single insured has two policies covering the same loss, but one policy is written with the expectation that the primary will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted.")(internal quotations and citations omitted).

12

But, the clause cannot transform an otherwise primary policy into an excess one. Id.

Applying the foregoing distinctions, the court held that CNA's contractual obligation to Coldwell Banker remained primary, not excess. This was so, as the court observed, because Coldwell Banker did not purchase primary coverage and then purchase additional excess coverage. Thus, CNA's obligation to pay would begin at "dollar-one," despite the inclusion of an "other insurance" clause. Id. at 382. Indeed, CNA's policy did not give it the right to afford coverage only upon the exhaustion of some other primary coverage. Rather, "that right [was] afforded [to] CNA by virtue of the existence of the Selective policy." Id. In that regard, the court made clear that when both carriers are primary, "each carrier owes a contractual duty to its own insured to faithfully fulfill its obligations. Each undertakes to represent its insured and negotiate settlements." Id. at 384.

Relying on the reasoning of CNA, a court in this district, more recently, found that an "other insurance" clause, worded substantially similar to the one in the Travelers Policy, cannot transform a primary insurance policy into an excess policy. High Point Safety & Ins. Co. v. Am. Mfrs. Mut. Ins. Co., No. 05-5759, 2006 U.S. Dist. LEXIS 70847, at * 10 (D.N.J. Sep. 29, 2006). In that case, an employee of Healthfair Vitamin Centers ("HVC") was driving his personal vehicle, with his supervisor as a passenger, to view a competitor's store. HVC was insured under an American Manufacturers Mutual ("AMM") policy, and

13

the driver was personally insured under a High Point policy. See Id. at *2-3. Nearly identical to the policies at issue here, AMM's policy stated that AMM would pay losses only "in excess of the amount due from that other insurance," and High Point's policy "shall pay a proportionate share of the loss" when other insurance overlapped in coverage. Id.

High Point brought suit against AMM, arguing that, as a co-primary insurer, AMM must contribute a pro rata share of the cost to defend and indemnify the employee in the underlying suit. Id. at *3-4. AMM countered that it had no duty to defend or indemnify the employee because of the excess "other insurance" clause in its policy. Rejecting that argument, the district court relied on the reasoning espoused in CNA and found that "High Point's fortuitous coverage of [the employee-driver] cannot serve to discharge the responsibility of AMM to insure HVC." Id. at *10. In doing so, the court further explained that the excess "other insurance" clause in the AMM policy did not transform its obligation to defend HVC on a primary basis. Id.

The same holds true in this case. The strikingly similar facts and legal conclusions in both High Point and CNA are compelling.[4] Here, just like in

---

[4] I note that another Appellate Division decision, W9/PHC Real Estate LP, supra, not discussed in detail by either party, explained the difference between a "true excess" and primary insurance. In that case, Crabtree, a landscaping company, was hired by plaintiff W9/PHC, a property management service, to remove snow from its property. Under that service contract, Crabtree was required to name W9/PHC as an additional insured on Crabtree's insurance policy issued by Farm Family Casualty Insurance Co. More importantly, the contract also contained an indemnity provision providing that Crabtree would indemnify W9/PHC against any "loss, costs, claims, damages" or suits asserted

CNA and High Point, the "other insurance" clause in the Encompass Policy provides coverage only on a proportional basis and the Travelers' Policy contains an excess "other insurance" clause.  Indeed, both courts in CNA and Highpoint found the distinction did not serve to change the co-primary relationship of the two insurance companies.  Likewise, here, the different "other insurance" clauses do not change Travelers' obligations to Weichert under its policy.  Rather, there is nothing in the record to indicate that the cost of Travelers' premium was contingent upon Encompass' policy, or that Travelers considered the "exhaustion of the [Encompass'] coverage [] a factor when it calculated the automobile insurance premium."  CNA, 354 N.J. Super

---

against W9/PHC. Id. at 407 N.J. Super at 185. The plaintiff was insured under its own general commercial liability policy through Zurich.  Both policies contained "other insurance" clauses.  However, notably, the Zurich policy states that

> This insurance is excess over:
> Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement. When this insurance is excess, we will have no duty . . . to defend.

Id. at 187.  When the court was called upon to decide which policy was primary, based on language of that provision and the service contract, the court held that the Zurich policy was excess over Crabtree's policy.
 Significantly, the excess "other insurance" clause in the Travelers Policy here does not contain the same language as the above-recited clause in W9/PHC Real Estate; that is, the Travelers Policy makes no mention of any additional insured. And, more importantly, the relationship of the parties in W9/PHC Real Estate is decidedly different than the one here, because the obligations of the parties, i.e., indemnification, in that case were governed by a service contract which is not present in this case. Therefore, I do not find W9/PHC Real Estate helpful or apposite to resolving the issues in this case.

at 383. Instead, Weichert purchased the Travelers Policy as its primary insurance, and it did not purchase any excess coverage from Travelers or any other insurance companies. Thus, Travelers' obligation to pay would start at "dollar-one." Travelers' contract with Weichert "does not give it the right to afford coverage only upon the exhaustion of [another] primary coverage." CNA, 354 N.J. Super. at 382. In that respect, Travelers' excess "other insurance" clause was nothing more than its attempt "to limit or eliminate its liability where another primary policy covers the risk." CNA, 354 N.J. Super. at 380.

I am also not persuaded that Jenkins, who was insured by Encompass for the personal vehicle he drove, and simply, because he was an employee of Weichart, renders Travelers an excess carrier. As the Appellate Division aptly noted: "To have a true primary-excess relationship, the same insured must purchase underlying coverage for the same risk." Id. at 383. Weichart neither had, nor was required by Travelers to have, an underlying policy covering the same risk. Without such excess coverage, Travelers was contractually charged with all of its obligations to its insured, i.e., Weichert, on a primary basis, including the obligation to negotiate a settlement in the underlying state tort action.

Notwithstanding the case law, Travelers insists that its coverage should be on an excess basis. To begin, Travelers, inexplicably, states in a footnote, that "[t]here is no dispute that the Encompass policy is primary to the Travelers policy . . . ." Travelers' Cross-Motion at p. 6, n.2. Travelers goes on to state that

16

Encompass' expert does not refute this fact in his report furnished for this litigation.[5]  However, this legal issue is clearly disputed by Encompass on these motions and the case law, as I have explained, supra, supports Encompass' position.

Next, Travelers cites to the dissenting opinion in the case Commercial Union Ins. Co. v. Chubb Gp. of Ins. Cos., 194 N.J. Super 69 (App. Div. 1984), for the proposition that "where one liability policy covers an employee for his own negligence and another covers his employer for the same negligence, the employee's policy must be exhausted before the employer's carrier may be called upon to pay."  Id. at 82 (Brody, Judge, dissenting).  While Commercial Union was reversed by the New Jersey Supreme Court for the reasons expressed by the dissenting judge, that case did not deal with interpretations of "other insurance" clauses.  Rather, wholly distinguishable from this case, Commercial Union involved respective obligations of a primary insurer and an excess insurer; plainly, that case did not involve two primary insurance policies with competing provisions regarding "other insurance."

Finally, Travelers disputes the relevance of CNA.  While recognizing that the facts in CNA are similar to the facts here, Travelers, nevertheless, grasping at straws, distinguishes CNA on the basis that there was no reference to a subrogation claim in that case.  Travelers goes on to argue that its

---

[5] I note that Travelers' terse responses to Encompass' position regarding the two competing "other insurance" clauses in both policies are only addressed in two footnotes.  See Travelers' Cross-Motion at p. 6, n.2; p. 9 n.3.

17

reimbursement claim is premised on its subrogation rights against Encompass through Weichert, and that the general rule is that a carrier with excess coverage is subrogated to the rights against the primary carrier. However, Travelers' argument in this regard presumes that the Encompass Policy provides primary coverage and that the Travelers Policy covers the loss on an excess basis. But, I have already found that both insurance policies are co-primary, and therefore, the issue of suborgation, as advanced by Travelers, has no relevance in light of that finding. Furthermore, Travelers attempts to factually distinguish CNA by explaining that Selective recognized its coverage obligation to Coldwell Banker. Travelers grossly mischaracterizes the facts of CNA. Nothing in the CNA decision would lead this Court to find that Selective conceded that it had a duty to defend Coldwell Banker in the underlying tort action. Quite the contrary, CNA's counsel accused Selective of acting in bad faith by obtaining a settlement and release in favor of only the employee up to her personal policy limits without obtaining a full release for Coldwell Banker and CNA; CNA sued Selective on that basis. Likewise, Travelers contends, here, that Encompass failed to settle the underlying lawsuit in good faith violating its duty to defend Weichert. I find that Travelers' arguments in this context are specious.

    I conclude by observing that Traveler spent the majority of its papers accusing Encompass of failing to abide by its duty to defend Weichert in good faith. Those arguments presume that Weichert is an insured under the

18

Encompass Policy by virtue of the excess "other insurance" clause in the Travelers Policy. As I have outlined above, this is not so. Therefore, all other arguments Travelers has made in that connection fail as a matter of law. Simply put, because both Encompass and Travelers had independently duties to defend their respective insureds, i.e., Jenkins and Weichert, Encompass owed no duty to Weichert. Accordingly, Encompass's motion for summary judgment is **GRANTED** and Travelers' cross-motion is **DENIED**. Judgment will be entered in favor of Encompass.

**DATED**:  August 19, 2014 /s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge